**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PATRICK HOPKINS,

                Plaintiff,                            05cv1510

      v.                                **ELECTRONICALLY FILED**

                                     Judge Schwab

GNC FRANCHISING, INC.,                   Chief Magistrate Judge
                                     Caiazza

                Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that plaintiff's motion for a temporary restraining order

("TRO") (doc. no. 2), now treated as a motion seeking preliminary injunctive relief,  be denied**.**

### II.  REPORT

This is an action for wrongful termination of franchise agreements.  Plaintiff, Patrick

Hopkins ("Hopkins"), is a General Nutrition Center ("GNC") franchisee and operates five GNC

stores located in Florida, Georgia and North Carolina.  Upon his default under the franchise

agreements, GNC terminated his five franchises.  Plaintiff filed a five count complaint alleging

(1) violation of a class action settlement, (2) common law fraud, (3) violation of the Florida

Deceptive Trade Practices Act (FDTPA), (4) breach of implied covenant of good faith and fair

dealing, and (5) tortious interference.  Plaintiff currently seeks a TRO[1] enjoining GNC from

terminating his franchise stores until the issues in the underlying complaint have been resolved.

### A.  STANDARD OF REVIEW

"[T]he granting of a preliminary injunction is an exercise of a very far-reaching power,

---

[1]Because all parties have notice, and have filed factual documents including affidavits,
this Court will treat plaintiff's motion for TRO as a motion for a preliminary injunction.

never to be indulged in except in a case clearly demanding it." *Warner Bros. Pictures v. Gittone*,

110 F.2d 292, 293 (3d Cir. 1940).  The decision to enter a preliminary injunction is committed to

the sound discretion of the district court.  *West Indian Co., Ltd. v. Gov't of Virgin Islands*, 812

F.2d 134, 135 (3d Cir. 1987).  By awarding a preliminary injunction, the court intends to:

> [P]reserve the relative positions of the parties until a trial on the merits can be
> held. Given this limited purpose . . ., a preliminary injunction is customarily
> granted on the basis of procedures that are less formal and evidence that is less
> complete than in a trial on the merits.

*Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1994).  As such, "a

decision on a preliminary injunction is, in effect, only a prediction about the merits of the case.

*Id*. at 70 (*citing U.S. v. Local 560 (I.B.T.)*, 974 F.2d 315, 330 (3d Cir. 1992)).

In determining whether to grant a preliminary injunction, a district court must consider

four factors: (1) whether the movant has a reasonable probability of success on the merits; (2)

whether the movant will be irreparably harmed by denying the injunction; (3) whether there will

be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the

injunction is in the public interest.  *Highmark Inc., v. UPMC Health Plan*, 276 F.3d 160, 171 (3d

Cir. 2001).  The court may only look at facts "presented at a hearing, or . . . presented through

affidavits, deposition testimony, or other documents, about the particular [situation]" of the

movant.  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000).  However, this

Court has adopted and followed the rule, "subject to few exceptions, that a preliminary

injunction should not be awarded on ex parte affidavits, unless in a clear case."  *Lare v. Harper*

*& Bros*, 86 F. 481, 483 (3d Cir. 1898); *see Murray Hill Restaurant v. Thirteen Twenty One*

*Locust*, 98 F.2d 578, 579 (3d Cir. 1938).

The burden of proof lies with the movant, who must produce "evidence sufficient to convince the trial judge that all four factors favor preliminary relief . . . ." *Opticians Ass'n of Am. v. Ind. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). The movant "must show a clear right to relief [where] . . . no disputed issues of fact" exist. *Charles Simkin & Sons, Inc., v. Massiah*, 289 F.2d 26, 29 (3d Cir. 1961). At the outset of the preliminary injunctive analysis, the movant must demonstrate the first two factors; *i.e.,* the likelihood of success on the merits and the probability of irreparable harm. *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987). If relevant, the district court must then consider the last two factors, the potential harm to the nonmoving party and whether the public interest is served. *Id*.

In regard to the first factor, the movant has the burden to show a likelihood of success on the merits. *Highmark Inc.*, 276 F.3d at 171. In finding whether the movant has met its burden, the court must keep in mind that the standard for granting a preliminary injunction "differs from the standard for granting a permanent injunction." *ACLU v. Black Horse Pike Regional Bd. Of Educ.*, 84 F.3d 1471, 1477 (3d Cir. 1996). In other words, granting a preliminary injunction should be based on "the *likelihood* that plaintiffs [will] succeed on the merits [and not on whether] plaintiffs *have* succeeded on the merits and are entitled to permanent relief." *Id*. (emphasis added).

The second factor requires the movant to show probable irreparable harm "which cannot be redressed by a legal or an equitable remedy." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). To show such "irreparable harm," the movant must demonstrate a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. *Adams*, 204 F.3d at 485. Thus, "[t]he possibility that adequate

compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Acierno*, 40 F.3d at 653 (*quoting Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  Economic loss does not constitute irreparable harm.  *Id.*  Moreover, "[e]stablishing a risk of irreparable harm is not enough."  *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).  Instead, the movant "has the burden of proving a 'clear showing of *immediate* irreparable injury.'"  *Id.* (*quoting Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir.1980)) (emphasis added).  Therefore, it is insufficient for the movant to show that the harm will occur only in the indefinite future. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

If the movant has met its burden of proof in showing the first two factors, the district court must then consider the third and fourth factors, if relevant.  The third factor weighs the interests and relative harm of the parties; *i.e.,.* "the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002).  Other circuit courts have observed, "[t]he more likely the [movant] is to win, the less heavily need the balance of harms weigh in [the movant's] favor." *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1568 (7th Cir.1996); *see also Standard Havens Products, Inc. v. Gencor Industries*, Inc., 897 F.2d 511, 513 (Fed. Cir. (MO.) Feb 23, 1990).  Also, "[t]he injury a [nonmoving party] might suffer if an injunction were imposed may be discounted by the fact that the [nonmoving party] brought that injury upon itself.  *Novartis Consumer Health*, 290 F.3d at 596.  *See also Pappan*, 143 F.3d at 806 ("The self-inflicted nature of any harm suffered by [the party opposing the injunction] also weighs in favor of granting preliminary injunctive

relief.").

Finally, the fourth factor questions whether an injunction would serve the public interest.

Generally, in actions involving private interests, "the public interest [factor] will *not* be as

important as the other [three] factors." 13-65 James Wm. Moore et al., *Moore's Federal Practice*

*– Civil* § 65.22[3] (Matthew Bender 3d ed. 2003) (emphasis added).  However, "in actions

implicating government policy or regulation, or other matters of public concern," and in actions

that are "found to have a substantial impact on the public interest," the court will consider the

public interest factor.  *Id*.  *See Yakus v. U.S.*, 321 U.S. 414, 440 (1944) ("Courts of equity may,

and frequently do, go much farther both to give and withhold relief in furtherance of the public

interest than they are accustomed to go when only private interests are involved.").  In such

cases, "[w]here the [movant] has demonstrated a likelihood of success on the merits, the public

interest leans even more toward granting the injunction."  *Novartis Consumer Health*, 290 F.3d

at 597.  Nevertheless, courts will not award preliminary injunctions "if it is found that public

policy would be harmed."  *Id*.  *See PG Const. Co., Inc. v. George & Lynch, Inc.*, 834 F. Supp.

645, 659 (D. Del. Sep 16, 1993) (court denied the injunction because movant's claim was not

supported by statutory or common law).

## B.  DISCUSSION

### 1.  Reasonable Probability of Success on the Merits

#### a.  Count One - Violation of Class Action Settlement

In his motion for TRO, plaintiff Hopkins argues that there is a likelihood of success on

the merits because GNC violated a 2001 class action settlement consent decree (*Duarte, et al. v.*

*GNC Franchising Inc., et al.,* 00-cv-332, W.D. Pa., The Honorable Gary L. Lancaster) by

allegedly: (1) advertising products below the franchisees wholesale price; and, (2) interfering

with third party vendor sales directly to franchisees. He uses the Buy One Get One (BOGO)

promotion as an example. The BOGO promotion offers GNC Gold Card holders the opportunity

to purchase two items from a selected group of promotional items, the first at a sale price, and

the second item for 50 percent off the regular store price.  However, plaintiff alleges that this

results in a retail price for the product which is lower than the franchisee wholesale price.

   GNC responds that Hopkins has not plead that he was a member of the settling class in

the consent decree, and therefore, does not have standing to raise count one of his complaint.

Further, GNC argues that the class was certified on August 14, 2001 and because Hopkins did

not even acquire at least two of his stores until May, 2002 and October, 2002, only 3 out of 5

stores would even be covered by any obligations under the settlement agreement, and that at the

inception of his franchise agreement, he signed a release limiting any liability under the alleged

class action settlement.  Finally, GNC argues that even if Hopkins has standing,  his allegations

are meritless because GNC is not selling its product at retail for less than franchisee wholesale

cost, and explains that BOGO items are only sold as a unit of two items, not individually.

Defendant argues, and this Court agrees,  that when the transaction price for two units is

analyzed, it becomes clear that GNC is not selling any of the subject products at less than the

franchisee wholesale cost.

   This Court finds that defendant's argument regarding lack of standing is compelling.

Furthermore, even if plaintiff had standing under the class action settlement, this Court finds that

plaintiff has not met his burden to show a reasonable probability of success on the underlying

claims of offering products to consumers at below wholesale costs, as was elucidated in the

6

BOGO example hereinabove.  Therefore, plaintiff's claim for violation of the class action settlement agreement does not have a reasonable likelihood of success.

### b.  Count Two - Common Law Fraud

Under Pennsylvania law, (the applicability of which will be discussed in section c) the five elements constituting a cause of action for fraud are: (1) misrepresentation of fact; (2) fraudulently uttered; (3) with intent to induce reliance; (4) inducing justifiable reliance; and (5) to the injury of a party.  *Averbach v. Rival Manufacturing Co.*, 809 F.2d 1016, 1019 (3d Cir. 1987).

In his complaint, plaintiff claims that defendant committed common law fraud by allegedly making certain false or inaccurate disclosure in GNC's Uniform Franchise Offering Circular ("UFOC") from 1997 to 2005.  Plaintiff also claims that he relied upon these statements in determining whether to become a GNC franchisee.  What plaintiff does not do is to show that he has been injured by any alleged misrepresentation in the UFOC.  In his affidavit, plaintiff estimates the value of his stores to be approximately $900,000.00 dollars.  Accordingly, because it is highly improbable that plaintiff could show any injury as a result of an alleged misrepresentation, plaintiff has failed to meet his burden to establish a  likelihood of success on the merits of this claim.

### c.  Count Three - Violation of Florida Deceptive Trade Practices Act (FDTPA)

Plaintiff next alleges that GNC violated Florida's consumer protection statute, the FDTPA, by engaging in certain unidentified conduct which violates the statute.  GNC argues that plaintiff cannot be successful on this claim for two reasons:  First, because the franchise agreements at issue have choice of law provisions under which Pennsylvania law is applicable.

And second, the FDTPA is a consumer protection statute which does not apply to experienced

franchise operators such as plaintiff.

At the outset, the Court must determine what law governs the franchise agreements in

this case.  The franchise agreements[2] contains a choice of law clause which state that:

> This agreement has been entered into and shall be governed by, and
> construed, interpreted and enforced in accordance with the laws of the
> Commonwealth of Pennsylvania, which laws shall prevail in the event of any
> conflict of law; provided, however, that any provision of this Agreement
> would not be enforceable under the laws of Pennsylvania, and if the
> Franchised Business is located outside of Pennsylvania, and further, if such
> provision would be enforceable under the laws of the state in which the
> Franchised Business is located, then such provision shall be interpreted and
> construed under the laws of that state.  Nothing in this choice of law provision
> is intended to make applicable any state franchise law that would otherwise not
> be applicable.

*See* Paragraph XXVI of Franchise Agreement, defendant's response in opposition to

motion for temporary restraining order, Exhibit A.

Where, as here, jurisdiction is based upon diversity, a federal court should apply the

choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

(1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Under Pennsylvania

law, "courts generally honor the intent of the contracting parties and enforce choice of law

provisions in contracts executed by them."  *Id.*

Pennsylvania courts have adopted Section 187 of the Restatement, Second, Conflict of

Laws, which honors choice of law clauses unless either (a) the chosen state has no substantial

relationship to the parties or the transaction and there is no reasonable basis for the parties'

---

[2]The franchise agreement quoted herein is attached to defendant's response as Exhibit A,
but the other five franchise agreements contain the same or very similar language.

choice, or (b) application of the law of the chosen state would be contrary to a fundamental

policy of a state which has a materially greater interest than the chosen state in the determination

of the particular issue. Restatement (Second) of  Conflict of Laws § 187 (1971). Pennsylvania

courts have traditionally held that a choice of law provision in a contract will be upheld as long

as the transaction bears a "reasonable relationship to the state whose law is governing." *Novus*

*Franchising Inc. v. Taylor*, 795 F.Supp. 122, 126 (M.D. Pa. 1992) (*citing Churchill Corp. v.*

*Third Century, Inc*., 396 Pa. Super. 314, 578 A.2d 532, 537 (1990), *app. denied*, 527 Pa. 628,

592 A.2d 1296 (1991)); *Instrumentation Assocs. Inc. v. Madsen Elecs. Ltd.*, 859 F.2d 4, 5-6 (3d

Cir. 1988). Thus, Pennsylvania courts will uphold contractual choice-of-law provisions where

the parties have sufficient contacts with the chosen state. *Jaskey Fin. and Leasing v. Display*

*Data Corp.*, 564 F.Supp. 160 (E.D. Pa 1983). In *Kruzits*, the United States Court of Appeals for

the Third Circuit stated: "Pennsylvania courts will only ignore a contractual choice of law

provision if that provision conflicts with strong public policy interests." Kruzits, 40 F.3d at 56.

Here, the parties have sufficient contacts with the forum state because GNC is a

Pennsylvania corporation with its principal place of business in Pennsylvania, and GNC has an

interest in uniformity in dealings with its franchisees who are scattered in numerous states

throughout the country, which provides a strong public policy reason in support of upholding the

forum selection clause.

Plaintiff does not argue that application of Pennsylvania law would be contrary to some

fundamental policy of Florida that would otherwise protect him.  Accordingly, the Court sees no

reason to disturb the parties' contractual choice of laws, and finds that, because the claim arises

from operation of the franchise agreement, the state claim will be governed by the laws of the

Commonwealth of Pennsylvania.

Since it does not appear that Pennsylvania law is contrary to Florida public policy

concerning the claim arising under the FDTPA, Fla. Stat. § 501.201-501.213, Pennsylvania law

governs this claim and therefore, the claim cannot stand.

However, even if the Court were to determine that the Florida law should apply and

allow the FDTPA claim to go forward, the claim would nonetheless fail because the FDPTA is

limited to consumer transactions, and Florida courts have rejected the argument that

sophisticated businessmen who have dealt in the franchising industry are not unwary and

inexperienced within the context of the statute.  *Hardee's Food Sys. v. Bennett*, 1994 U.S. Dist.

LEXIS 21596 (S.D. Fla. March 23, 1994) (dismissing franchisee's counterclaim against

franchisor for violating FDPTA).

Accordingly, plaintiff's claim for violation of the FDPTA does not have a reasonable

probability of success.


### d.  Count Four - Violation of Duty of Good Faith and Fair Dealing

Hopkins next alleges that GNC breached its duty of good faith and fair dealing by

attempting to terminate Hopkins franchise agreement without good cause.

Section 205 of the Restatement (Second) of Contracts states that "every contract imposes

upon each party a duty of good faith and fair dealing in its performance and its enforcement."

Restatement (Second) of Contracts § 205 (1981). While this covenant of good faith and fair

dealing has been imposed in some contexts in Pennsylvania, "under Pennsylvania law, every

contract does not imply a duty of good faith." *Parkway Garage, Inc. v. City of Philadelphia*, 5

F.3d 685, 701 (3d Cir. 1993). Instead, the duty of good faith and fair dealing is limited to special

types of contracts involving special relationships between the parties.

Pennsylvania courts rarely recognize an implied duty of good faith. In franchise

relationships, the Supreme Court of Pennsylvania has held that although a franchisor has a duty

to act in good faith and with commercial reasonableness when terminating a franchise

agreement, the Court would not recognize an implied duty of good faith where the contract

contained express provisions authorizing the termination of the franchise without good cause.

*Atlantic Richfield Co. v. Razumic*, 390 A.2d 736, 742 (Pa. 1978).

The implied covenant of good faith cannot modify or override express contractual terms.

*See Amoco Oil Co. v. Burns*, 437 A.2d 381, 384 (Pa. 1981) ("the duty of good faith and

commercial reasonableness is used to define the franchisor's power to terminate the franchise

only when it is not explicitly described in the parties' written agreements."); *Witmer v. Exxon

Corp.*, 434 A.2d 1222, 1226, 1227 (Pa. 1981) (implied duty of good faith "serves the valuable

purpose of defining contractual relationships which have been left unexpressed by the parties").

The franchise agreements in this case state that should "[a] [p]rospective Franchisee or

Franchisee . . . be in default under this Agreement . . . all rights granted herein shall

automatically terminate without notice to Prospective Franchisee or Franchisee . . . ." *See*

Paragraph XV of Franchise Agreement, defendant's response in opposition to motion for

temporary restraining order, Exhibit A.[3]  Because the franchise agreements in this case state that

defendant may automatically terminate the franchise based upon plaintiff's default, and plaintiff

---

[3]Again, Exhibit A is used as an example, but the other five franchise agreements have the
same or similar language regarding default.

does not dispute that he defaulted, any implied duty of good faith and fair dealing cannot override the express provisions of the contract.  Therefore, plaintiff has failed to show any likelihood of a successful claim for breach of implied duty of good faith and fair dealing.

### e.  Count Five - Tortious Interference

Hopkins finally alleges that defendant tortiously interfered with his attempts to sell at least two of his franchises.  Under Pennsylvania law, a cause of action for tortious interference with contractual relations has the following elements: (1) the existence of a contractual relation between plaintiff and a third party; (2) purposeful action on the part of defendant, with specific intent to harm the existing relationship; (3) absence of privilege or justification on the part of defendant; and (4) actual legal damages to plaintiff as a result of defendant's conduct.  *CBG Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (citing *Crivelli v. General Motors Corp.*, 215 F.3d 385, 394 (3d Cir. 2000)).  As defendant points out, and this Court agrees, plaintiff's claim for tortious interference will likely fail because he has failed to plead that GNC was not justified in conducting due diligence before approving the sale of the two franchises, or that the exercise of such due diligence was intended by GNC to harm plaintiff.  Accordingly, plaintiff has not shown a likelihood of success on his claim for tortious interference.

### 2.  Irreparable Harm

Plaintiff argues that if this Court does not issue a preliminary injunction, he will be irreparably harmed because he will be deprived of his business, which he has successfully operated for almost ten years and that there is no adequate remedy at law.

The Court of Appeals for the Third Circuit has summarized the irreparable harm

requirement as follows:

> Establishing a risk of irreparable harm is not enough.  A plaintiff has the
> burden of proving a clear showing of immediate irreparable injury. . .The
> requisite feared injury or harm must be irreparable - - not merely serious or
> substantial, and it must be of a peculiar nature, so that compensation in
> money cannot atone for it. . . We have never upheld an injunction where the
> claimed injury constituted a loss of money, a loss capable of recoupment in
> a proper action at law.

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

Defendant argues, and this Court agrees, that even if this litigation ultimately reveals that

defendant's termination of the franchise agreement was legally unjustified, plaintiff's loss of his

business and profits are not of a peculiar nature such that monetary compensation would not be

adequate to compensate him for his loss.  In fact, plaintiff actually states in his affidavit that "the

value of [his] five (5) stores. . . [is] approximately $900,000.00."  *See* plaintiff's memorandum in

support of motion for temporary restraining order, *Hopkins Affidavit ¶¶ 7-8*.  Plaintiff has

demonstrated that the businesses at issue are susceptible to objective monetary valuation, and he

has not demonstrated that he will be irreparably harmed if the injunction he seeks is denied.

## C.  Conclusion

After considering the facts presented through affidavits and other documents, along with

the written and oral arguments of the parties, this Court finds that plaintiff has failed to meet his

burden to show that he has a reasonable probability of success on the merits and that he will be

irreparably harmed should his motion for TRO/preliminary injunction be denied.  Because

plaintiff has failed to meet his burden on the first two factors under the test to determine whether

a TRO/preliminary injunction should be issued, this Court will not address the two remaining

factors.  Accordingly, and for the reasons set forth hereinabove, plaintiff's motion for TRO (doc.

no. 2) should be denied.


November 17, 2005                                 s/Francis X. Caiazza
                                                  U.S. Magistrate Judge


cc:
Hon. Arthur J. Schwab
William Witte, Esq.
Jerry Stubenhofer, Esq.
Brad Funari, Esq.
Gary Kelly, Esq.