IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICK HOPKINS, Individually and on
behalf of OPPORTUNITIES PLUS, INC.

      Plaintiffs,                               05cv1510

v.                                **ELECTRONICALLY FILED**

GNC FRANCHISING, INC.,

      Defendant.

**MEMORANDUM OPINION**

**I. Introduction**

This is an action for wrongful termination of franchise agreements. Plaintiffs, Patrick Hopkins, individually and on behalf of Opportunities Plus, Inc. ("Hopkins") are General Nutrition Center ("GNC") franchisees and operate five GNC stores located in Florida, Georgia and North Carolina. Upon their default under the franchise agreements, GNC terminated their five franchises. Plaintiffs have filed a five count complaint alleging (1) violation of a class action settlement, (2) common law fraud, (3) violation of the Florida Deceptive Trade Practices Act (FDTPA), (4) breach of implied covenant of good faith and fair dealing, and (5) tortious interference.

Plaintiffs previously sought a TRO/preliminary injunction, and a hearing was held before United States Magistrate Judge Francis X. Caiazza on November 15, 2005. On November 17, 2005, Judge Caiazza issued a Report and Recommendations in which he recommended that the motion for TRO/preliminary injunction be denied. On December 9, 2005, this Court issued an Order adopting the Report and Recommendations as the opinion of the Court (doc. no. 16).

Currently pending before this Court is defendant's motion to dismiss pursuant to

Fed.R.Civ.P. 12(b)(6) (doc. no. 19). After careful consideration of defendant's motion, plaintiffs' response, and the respective memoranda of law, this Court will grant defendant's motion to dismiss and will dismiss some of the counts of the complaint with prejudice, and some without prejudice.

## II. Standards

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court accepts the well-pleaded factual allegations of the complaint as true, and draws all reasonable inferences therefrom in favor of the plaintiff. Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital, 185 F.3d 154, 155 (3d. Cir. 1999). A claim should not be dismissed for failure to state a claim unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its allegations which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marshall-Silver Construction Co. v. Mendel, 894 F.2d 593, 595 (3d. Cir. 1990).

In making this determination, the court must construe the pleading in the light most favorable to the non-moving party. Budinsky v. Pennsylvania Dept. of Environmental Resources, 819 F.2d 418, 421 (3d. Cir. 1987). Further, the Federal Rules of Civil Procedure require notice pleading, not fact pleading, so to withstand a Rule 12(b)(6) motion, the plaintiff "need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004), quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules . . . to define facts and issues and to dispose of unmeritorious claims.").

### III. Discussion

### A.  Count One - Violation of Class Action Settlement (Consent Decree)

As set forth in the Court's previous opinion on the TRO/preliminary injunction, count one of the complaint, which alleges a violation of the class action settlement, fails because plaintiffs lack standing to raise this claim.  Plaintiffs have not plead that they were members of the settling class and therefore they do not have standing to pursue count one of the complaint. Blue Chip Stamps v. Manor Drug Store, 421 U.S. 723, 749-750 (1975) (a consent decree, such as the class actions settlement upon which franchisee bases its claim, may not be enforced by those who are not a party to it).

In opposition to the motion to dismiss, plaintiffs now claim that they were class members because they were franchisees of three stores at the time of class certification.  However, plaintiffs failed to plead that they were members of the settling class.  In its reply, defendant alleges that plaintiffs were not parties to the class action settlement agreement because they opted out of the class action settlement, and therefore, do not have standing to pursue a claim for violation of the class action settlement.

In resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a Court may take judicial notice of another court's opinion - not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. Southern Cross Overseas Agencies v. Wah Wong Shipping Group Ltd., 181 F.3d 410 426 (3d Cir. 1999).  The "Final Judgment and Order of Dismissal" in the class action settlement, which was issued in this district by United States District Judge Gary L. Lancaster, is judicially noticeable.  Moreover, because it is document on which plaintiffs rely (in fact they purported to

attach that document to their complaint), the Court will examine the Final Judgment and Order of Dismissal to determine whether plaintiffs indeed opted out of the class action settlement and therefore do not have standing to allege a violation of said class action settlement. As GNC argues, and this Court agrees, Exhibit A to the Final Judgment and Order of Dismissal evidences that plaintiffs opted out of the class action settlement (doc. no. 24, Exhibit 1-A). Therefore, plaintiffs do not have standing to allege a violation of the class action settlement, and accordingly, count one of the complaint will be dismissed with prejudice.

### B. Count Two - Common Law Fraud

Under Pennsylvania law (the applicability of which will be discussed in section C) to allege a claim of fraud, plaintiffs must show all six elements of a fraud claim: (1) representation; (2) which is material to the transaction at hand; (3) made falsely, with the knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance. Foster v. JLG Inds., 372 F. Supp. 2d 792, 800 (M.D. Pa. 2005)(citing Feeney v. Disston Manor Personal Care Home, Inc., 849 A.2d 590, 597 (Pa. Super. 2004). Fed.R.Civ.P. 9(h) provides that allegations of fraud are to be plead with particularity.

In their complaint, plaintiffs claim that defendant committed common law fraud by: allegedly making certain false or inaccurate disclosure in GNC's Uniform Franchise Offering Circular ("UFOC") from 1997 to 2005; imposing "reset fees" (fees that are charged to rearrange signage, displays and merchandise within the store), which violated " the remodeling terms and provisions of the franchise agreement"; and committing advertising fund violations. Complaint, ¶ 102-134. What plaintiffs do not allege is that they have been injured by any such alleged

4

misrepresentations. Accordingly, plaintiffs have not shown or even alleged any injury as a result of an alleged fraud and therefore, this claim will be dismissed with prejudice.[1]

### C. Count Three - Violation of Florida Deceptive Trade Practices Act (FDPTA)

Plaintiffs next allege that GNC violated Florida's consumer protection statute, the FDTPA, by engaging in certain unidentified conduct which violates the statute. The franchise agreements in this case contain choice of law clauses which state that:

> This agreement has been entered into and shall be governed by, and construed, interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania, which laws shall prevail in the event of any conflict of law; provided, however, that any provision of this Agreement would not be enforceable under the laws of Pennsylvania, and if the Franchised Business is located outside of Pennsylvania, and further, if such provision would be enforceable under the laws of the state in which the Franchised Business is located, then such provision shall be interpreted and construed under the laws of that state. Nothing in this choice of law provision is intended to make applicable any state franchise law that would otherwise not be applicable.

See Paragraph XXVI of Franchise Agreement, defendant's response in opposition to motion for temporary restraining order (doc. no. 6), Exhibit A.

Where, as here, jurisdiction is based upon diversity, a federal court should apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496

---

[1] The Court agrees with GNC that, to the extent plaintiffs are making allegations of fraud based upon the "terms and provisions of the franchise agreement," Complaint at ¶ 134, such allegations are better suited to a potential breach of contract action because "its success would be wholly dependent upon the terms of the contract." Sunquest Information Systems, Inc. v. Dean Witter, 40 F.Supp. 2d 644, 651 (W.D. Pa. 1999)(quoting C.P. Cook Coal Co. v. Browning Ferris Inc., 1995 WL 251341 *5 (E.D. Pa. April 26, 1995)). The Court expresses no view on the potential merits of these allegations, but rather finds that the allegations contained in count two are more akin to a breach of contract action.

(1941); Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994). Under Pennsylvania law, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Id.

Pennsylvania courts have adopted Section 187 of the Restatement, Second, Conflict of Laws, which honors choice of law clauses unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. Restatement (Second) of Conflict of Laws § 187 (1971). Pennsylvania courts have traditionally held that a choice of law provision in a contract will be upheld as long as the transaction bears a "reasonable relationship to the state whose law is governing." Novus Franchising Inc. v. Taylor, 795 F.Supp. 122, 126 (M.D. Pa. 1992) (citing Churchill Corp. v. Third Century, Inc., 396 Pa. Super. 314, 578 A.2d 532, 537 (1990), app. denied, 527 Pa. 628, 592 A.2d 1296 (1991)); Instrumentation Assocs. Inc. v. Madsen Elecs. Ltd., 859 F.2d 4, 5-6 (3d Cir. 1988). Thus, Pennsylvania courts will uphold contractual choice-of-law provisions where the parties have sufficient contacts with the chosen state. Jaskey Fin. and Leasing v. Display Data Corp., 564 F.Supp. 160 (E.D. Pa 1983). In Kruzits, the United States Court of Appeals for the Third Circuit stated: "Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests." 40 F.3d at 56.

Here, the parties have sufficient contacts with the forum state because GNC is a Pennsylvania corporation with its principal place of business in Pennsylvania, and GNC has an interest in uniformity in dealings with its franchisees who are scattered in numerous states

6

throughout the country, which provides a strong public policy reason in support of upholding the forum selection clause.

Plaintiffs does not argue that application of Pennsylvania law would be contrary to some fundamental policy of Florida that would otherwise protect them. Accordingly, the Court sees no reason to disturb the parties' contractual choice of laws, and finds that, because the claim arises from operation of the franchise agreement, the state claim will be governed by the laws of the Commonwealth of Pennsylvania.

Since it does not appear that Pennsylvania law is contrary to Florida public policy concerning the claim arising under the FDTPA, Fla. Stat. § 501.201-501.213, Pennsylvania law governs this claim and therefore, the claim cannot stand and will be dismissed with prejudice.

**D.     Count Four - Violation of Duty of Good Faith and Fair Dealing**

Plaintiffs next alleges that GNC breached its duty of good faith and fair dealing by attempting to terminate their franchise agreements without good cause.

Section 205 of the Restatement (Second) of Contracts states that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). While this covenant of good faith and fair dealing has been imposed in some contexts in Pennsylvania, "under Pennsylvania law, every contract does not imply a duty of good faith." Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993). Instead, the duty of good faith and fair dealing is limited to special types of contracts involving special relationships between the parties.

Pennsylvania courts rarely recognize an implied duty of good faith. In franchise relationships, the Supreme Court of Pennsylvania has held that although a franchisor has a duty

to act in good faith and with commercial reasonableness when terminating a franchise agreement, the Court would not recognize an implied duty of good faith where the contract contained express provisions authorizing the termination of the franchise without good cause. Atlantic Richfield Co. v. Razumic, 390 A.2d 736, 742 (Pa. 1978).

The implied covenant of good faith cannot modify or override express contractual terms. See Amoco Oil Co. v. Burns, 437 A.2d 381, 384 (Pa. 1981) ("the duty of good faith and commercial reasonableness is used to define the franchisor's power to terminate the franchise only when it is not explicitly described in the parties' written agreements."); Witmer v. Exxon Corp., 434 A.2d 1222, 1226, 1227 (Pa. 1981) (implied duty of good faith "serves the valuable purpose of defining contractual relationships which have been left unexpressed by the parties").

The franchise agreements in this case state that should "[a] [p]rospective Franchisee or Franchisee . . . be in default under this Agreement . . . all rights granted herein shall automatically terminate without notice to Prospective Franchisee or Franchisee . . . ." *See* Paragraph XV of Franchise Agreement, defendant's response in opposition to motion for temporary restraining order (doc. no. 6), Exhibit A.[2]  Because the franchise agreements in this case state that defendant may automatically terminate the franchise based upon plaintiffs' default, and plaintiffs do not dispute that they defaulted, any implied duty of good faith and fair dealing cannot override the express provisions of the contract.  Therefore, this claim will be dismissed with prejudice.

---

[2]Exhibit A is used as an example, but the other four franchise agreements have the same or similar language regarding default.

### E. Count Five - Tortious Interference

Plaintiffs finally allege that defendant tortiously interfered with their attempts to sell at least two of their franchises.  Under Pennsylvania law, a cause of action for tortious interference with contractual relations has the following elements: (1) the existence of a contractual relation between plaintiff and a third party; (2) purposeful action on the part of defendant, with specific intent to harm the existing relationship; (3) absence of privilege or justification on the part of defendant; and (4) actual legal damages to plaintiff as a result of defendant's conduct.  <u>CBG Occupational Therapy, Inc. v. RHA Health Servs. Inc</u>., 357 F.3d 375, 384 (citing <u>Crivelli v. General Motors Corp.</u>, 215 F.3d 385, 394 (3d Cir. 2000)).  As defendant points out, and this Court agrees, plaintiffs' claim for tortious interference fails because they have failed to plead that GNC was not justified in conducting due diligence before approving the sale of the two franchises, or that the exercise of such due diligence was intended by GNC to harm plaintiffs.  Accordingly, count five of plaintiffs' complaint fails to state a claim on which relief may be granted, and this Court will dismiss this count without prejudice.

### IV. Conclusion

For the reasons set forth hereinabove, this Court will grant defendant's motion to dismiss, and will dismiss counts one, two, three and four with prejudice and count five without prejudice.

An appropriate order follows.

s/Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**PATRICK HOPKINS, Individually and on
behalf of OPPORTUNITIES PLUS, INC.**

      **Plaintiffs,**                                                05cv1510

    v.                                                          **ELECTRONICALLY FILED**

**GNC FRANCHISING, INC.,**

      **Defendant.**

## ORDER OF COURT

And now, this 13th day of January, 2006, for the reasons set forth in the foregoing Memorandum Opinion, this Court will grant defendant's motion to dismiss (doc. no. 19) and will dismiss counts one, two, three and four with prejudice and count five without prejudice. The clerk shall mark the docket as closed.

                                              SO ORDERED this 13th day of January, 2006.

                                              s/Arthur J. Schwab
                                              Arthur J. Schwab
                                              United States District Judge

cc:    All counsel of record as listed below

William J. Witte, Esquire
Riley, Hewitt & Sweitzer
650 Washington Road, Suite 300
Pittsburgh, PA 15228

Gerald J. Stubenhofer, Esquire
Gordon W. Schmidt, Esquire
Brad A. Funari, Esquire
McGuire Woods
625 Liberty Avenue

23rd Floor, Dominion Tower
Pittsburgh, PA 15222-3142